Good morning, and may I please the court. On behalf of the appellant Gary Klopp, my name is Harry Levy. In our view, the district court abuses discretion in finding Mr. Klopp in civil contempt for three reasons. The first is a due process argument based on the basis upon which the court ultimately found Mr. Klopp in contempt. Second is the lack of an unequivocal command on the stipulated final judgment, specifically as to the amount of compensation Mr. Klopp was entitled to receive under his employment agreement and whether he was required to notify the regulators of a temporary residence in California. And the third is whether the district court misconstrued Mr. Klopp's employment agreement in a way that supported the finding of civil contempt. Even if the district court did not abuse this. Can I ask you a question, please? Of course, Your Honor. I think it was about the second point you made about his compensation. Yes. So, and I understood from your brief that your main argument on this is that the contempt finding is invalid because it's based on his compensation, which is not part of the consent decree, right? Correct. Compensation is nowhere found in the stipulation final judgment. If you will just assume with me for a moment, and we're just assuming. I'm sorry, at what section? Nothing. Assume with me for a moment, just assuming, that I don't think the finding of contempt was based on his compensation. I think it was based on a finding that Mr. Klopp continued to manage his mortgage brokerage company. And the district court held that that was a breach of paragraph 8 of the consent decree. Do you have an argument about that that you want to make? Well, I. If it was about management and not compensation. I think it's blended because the court, any time the court. No, but I want you to assume for a minute what I'm really interested in. So, I hope, and maybe I'm not being clear enough. If you just assume for a second, forget the compensation. The district court, just assume it, and we can come back to it. The district court based his contempt finding on a finding that Mr. Klopp continued to manage and operate his mortgage brokerage company. And that that was in violation of paragraph 8. Do you have an argument you want to make about that? Or should we just really focus on the compensation? I think the compensation because I believe that the court went beyond that and used the compensation agreement to support the argument with management. If the court looks at the transcript. So, you can see that if he was managing the company, that that would have been a violation of paragraph 8. If we're talking about management, of course, he was allowed to do human relations. But if he was managing beyond HR? He was permitted by his contract. Excuse me. His contract with People's Bank, Owings Mills, provided him with certain responsibilities to, this was a stand-alone platform. Can I just, we have limited time if you could just say yes or no. If he was managing his company, if he was managing the loan origination process, if he was managing, you know, review of lender applications, if he was managing things beyond HR, in your view, was that consistent with paragraph 8 or not? It is not, but I do not believe that is what the court was focused on. Just so I understand, so you, all right, I did not understand that to be your argument. And so I guess I'm now a little bit confused. So, I understood your argument to be that paragraph 8 prohibited certain activities, right? Contact with, primarily, contact with lenders and contact with customers. That's 8A. That he could manage the business. Correct. So long as he did not contact lenders and did not contact customers. And there are some other examples, but let's just focus on those two. So long as his management did not extend to those activities, I understood you to be arguing that his management would be consistent with paragraph 8. I thought that was the entire argument below. It is. And I, perhaps I didn't quite understand because I wanted to go granular and I saw Judge Harris was going broader than that. I'm just asking a question. Is he allowed, I'm not going broad or narrow, I just want to know, do you think he is allowed to manage, say, the loan application review process? He is allowed to do what 8, as long as 8A says what he cannot do. 8B says what he cannot do. A is, as Judge Richardson said, he can't communicate with consumers. So the answer to my question is yes or no. Can he manage the review of the loan application process at his firm? He can manage it as long as he does not communicate in 8A with consumers and in 8B with third parties. Okay. So can he tell a subordinate, call this loan applicant and tell her, we're going to approve the loan, but she has to do the title service at firm F? He can. He can do that? Yes. Okay. So he can arrange for a kickback so long as he tells a subordinate to make the phone call. No, he cannot arrange that. Well, I just asked you, can he do that, and you said yes. He cannot arrange for a kickback. Well, why not? Maybe I wasn't clear enough in my hypothetical. You think he can tell a subordinate, pick up the phone, call this loan applicant, tell her, we will grant this loan, we'll approve the loan, but she needs to use title service X. And then, same subordinate, call title service X and say, we're sending you this loan application and we'd like 5% back. He didn't make any phone calls. He didn't directly communicate with anyone. He cannot direct a subordinate to violate the law. But is it prohibited? What I'm trying to get at is if he can't communicate directly, that's your view of 8A and B, he can't do direct communications outside. But can he ask a subordinate to make certain phone calls? I think that the stipulated final judgment doesn't address that. So he could do that. It says what he cannot do. Okay, okay. He cannot communicate with clients. So your answer is yes, he can tell subordinates to make particular phone calls. Yes, but that is not what the record. I understand. I'm just asking. I really want to understand how you view these provisions. If that is your answer, that he can have a subordinate make the phone calls, does it seem like common sense that the agencies would enter into that agreement? You can't make the phone calls yourself, but absolutely, go ahead and tell someone else to make them? I don't have a response to that because I don't know how they're going to do that. A, well, I've gone far back. Should I focus on those, on paragraph 8B and C? Is that what the Court's interest is in Judge Richardson? I mean, I'm now a little confused as well, I think, as to whether your argument – I mean, I guess I'm now turned around. I thought your argument below was, listen, he can manage and own the business, right? He just can't do A and B, right, which are like specific ideas, right, like contacting, soliciting, and dealing with consumer borrowers, right? So it prohibited him from being hands-on. Correct. And I understand Judge Harris's point, which is like that was not a very good deal for the CFPB, and maybe we'll ask them that. But I understood that to be your argument, that his ownership and management at a high level was wholly permissible by A and B, so long as he did not specifically contact, solicit, or otherwise deal with borrowers, right, or B, contact, solicit, or otherwise deal with third-party business engaged in settlement services. It prohibited him from being hands-on. Correct. And that might make sense because we don't assume that his subordinates are going to break the law. We're worried about him breaking the law. And so if you add an intermediary between them, right, it's sort of the nature of having multiple people involved in criminal activity is less likely to take place, we hope, in the mortgage business. And that's what 8A3 prevented him from doing, accepting a fee, kickback, or thing of value, either individually or through an agent. Right, so that, okay, so you do agree that he was permitted to do everything except for what's specifically mentioned in A and B. Yes. And so ownership, for example, is not prohibited by A and B, and therefore your position is his ownership, and therefore the money he gets as a result of being the owner is permitted under A and B. Correct. So to follow up on that, that view, which is what I thought you were arguing to, needs to be squared with 8C. And 8C has a specific carve-out for what those limitations, what's left after the limitations. That's one way of reading it. 8C is what's left after A and B. And what it says is that the, quote, solely thing that's left is the personnel and HR manager. Correct. So how does 8C, it seems like your argument is, well, 8C may say solely, but because certain things aren't in A and B, there are some other things that he can still do, too. So 8C doesn't seem to make sense to me, given your argument. Well, 8C was a specific role he could play on a day-to-day basis. Right. And he did. But the facts suggest that he picked up and moved one month after the stipulated final judgment. He was no longer in place, and he was supervising and he was doing his HR personnel role, that was his testimony, from California and then coming back from Maryland. He stepped back because that's what the court had indicated it wanted the role to be limited. And consequently, there was a meeting of the employees. Another person was Stacey Carney, designated as the official manager of the branch. And she was the one who took over the area that Mr. Clark was no longer permitted to handle. My question may not have been, I'm not so interested in what happened. I'm interested in what your position is on what the document says. And it's taken us a while, but I thought we'd come back to the notion that you believe you could manage, you could operate, you could do anything other than directly contact customers and third-party vendors. You can do everything else. Those specific things are the only things that are excluded. And I'm trying to square that with 8C, which says, these limitations shall not prohibit CLOP from solely. And it looks like it's saying the only thing left after A and B is this HR function. And you seem to be arguing, no, there's a whole bunch of other things left. And I'm wondering why 8C doesn't specify just the HR and not all the other things you say are left. Well, that's where the compensation agreement comes into play. The compensation agreement comes into play because Mr. CLOP essentially provided a platform, that's how it's characterized in the testimony, for People's Bank. And there were employees, and they did the work, and the money went into an account, and Mr. CLOP funded all the expenses under the employment agreement. And then he recaptured his expenses at that point. There was also a profile fee that went back to People's Bank. Payroll was paid. I do have a question, and I apologize for interrupting, but I really do want to see. I'm going to take one more run at Judge Quattlebaum's question. It's the word solely in paragraph C that's giving me trouble. It seems to suggest, or actually just say, that there's one management role. This is the sole management role he can play, and it's personnel and HR. So how come he can also perform other management functions? His only management functions were providing the lease, providing the office supplies, providing all of the office expenses. Mr. CLOP had to pay that. Those are the management things that he handled. He did not handle the communications on the actual mortgage lending. But I guess I just wonder. Do you know what? I don't know if you have it in front of you, but maybe you could look at the order. Because that's what we're all really focused on, is the language of the order. And we're trying to figure out, at least I am trying to figure out, if it says in paragraph C that he has this one sole management function, how it can also be the case that he has other management functions that he can do. I am inartfully. I agree with the court that on a day-to-day basis.  I'm just asking a question. The stipulated final judgment says that on a day-to-day basis, he is restricted to the HR administrative functions, which are in 8C. I didn't understand you to be arguing that at all. I'm not sure whether we're not communicating here, but I didn't understand you to be making that argument at all. I understood your argument before in the district court to be 8A and 8B are specific prohibitions. Correct. 8C is a reservation of certain rights. But the reservation, the limitations, these limitations, referring to A and B, shall not prohibit and then describes this HR function. But that negative, non-prohibition, cannot expand A and B. It can only limit A and B, is what I understood the argument below and on appeal to be. But you seem to not be saying that. Well, I apologize for being inartful, because what I'm trying to focus today is regardless of the functions he could provide, under the employment agreement, he was entitled to the compensation he earned, which was the significant... What I understood your argument to be was all about the compensation, and that's why I started by saying if we forget the compensation for a minute and just look at this... And I don't mean to be difficult with the court, but that was the basis and that was the focus and the cornerstone of the district court contempt here. That's what I understood your argument to be on appeal, that the district court made this one central mistake. The district court thought that because he was receiving all of the compensation from his company, he was in violation of this order. Okay. Let me tell you that this part is not a question. This is I'm telling you what I think. I don't think that's what the district court held. I read the district court decision differently than you do. I read the district court as having held that it was his management of the company, not the getting the compensation, but the active management of the company that put him in violation of the consent decree. So that's where I started with you. Do you have an argument you want to make about that? I didn't see it in your brief, but... Building off of what Judge Quattlebaum stated, and I'm about to go over my time, I apologize, HC leaves room for that. It leaves room for HR and personnel management. Do you think it also leaves room to manage, for instance, review of loan applications? It does because the prohibitions are in A and B, and that is not in A and B, the management. Okay, and even though it's a sole management function in C, do you think the word solely is just, you know, a metaphor or something? No, I don't. But I believe that it is not excluded in A and B, and therefore it can be found in C. And to the extent it's not, we would go back into the unequivocal command argument. I apologize if we got distracted, and I took the course. I'll reserve the rest of my time for rebuttal. Thank you. Thank you. May it please the Court. With hopes of clarity, can you help me understand, because maybe I misunderstand, but one of the two of us, I think, misunderstands. Is your understanding that the only argument that Mr. Klopp is making is the compensation piece, not the argument that it's only prohibited from doing A and B, so whatever he does, as long as it's not A and B, he's good? Based on the colloquy immediately beforehand, yes. Yes. I said, does he do either A or B? The answer of yes is not helpful. Fair enough. It is my understanding, based on his argument here, that it was just about the compensation. Based on the briefs. He said both. Based on the briefs, go to that. And based on the discussion below. Based on the briefs and the discussion below, they were attempting to make an argument that A and B are the prohibitions and C is a safe harbor. Tell me why that's wrong. Understanding that argument, tell me why that's wrong. Why should we read C, the negative C, shall not prohibit, as defining the scope of the prohibition? If we take a step back, this consent judgment was entered into because he was caught taking kickbacks in an illegal scheme. And so the consent judgment was designed to address three primary issues. One, to restrict his activities. Two, to monitor his activities on an ongoing basis. And three, to provide some transparency and notify the consumer public and other regulators about his activities. So in terms of the first, restricting his activities, there was a balance that was attempted to be reached between prohibiting him entirely and providing him with a means to earn a living. And so that is what Paragraph 8 attempts to do. And so what do you understand that balance to him? That is helpful, right? But help me understand how we're supposed to understand A, because the balance says, here are two things you can't do, right? Borrowers and settlement service companies, right? But you're not prohibited, despite those two limitations, you're not prohibited from being an HR manager. So 8A focuses on consumer loan applicants in any capacity. And 8B focuses on third parties involved in settlement services. Those two, the applications from beginning to end, essentially, is what that covers. You've got the loan applicants that submitted their applications as part of the any capacity. And then you've got the third parties, which are the mortgage lenders, the title companies, and all the other people that make the mortgage happen. So it looks to me like what you're saying is A's reference, or A's language that says, in any capacity. And then B's reference for otherwise dealing. Expand beyond the contacting either customers or third parties to essentially any role at all about that. So those kind of catch-all phrases take it from two narrow solicitation-type prohibitions to essentially running the business, and the only thing left is the HR thing in C. Is that right? Essentially, yes. Here's my concern. A civil contempt is a serious thing, and the district court judge viewed credibility, and we'll defer to that, and I get all the facts about this case. But I have a concern that you seem to be arguing that catch-all phrases are the basis on which parties in general, if we were to issue some opinion that will live past this case, are subject to penalties like the ones we have here. And it looks to me like, quite frankly, Mr. Klotz reading C awful broadly to say personnel and HR mean you can do everything. And I think you're reading A and B broadly to say it prohibits everything, and I'm trying to figure out where all the everything comes, and it looks like we're supposed to guess from that as best I can tell. I don't think the court needs to even get to that point. We have a case where 8B explicitly says he's prohibited from dealing with third parties engaged in settlement services. We have thousands of pages of e-mails where he is dealing with lenders, CMG Financial and Publix. We also have his testimony that he dealt with lenders a dozen times a month. A hundred percent. So except as a premise that I believe the civil contempt finding is valid. Okay. But there are two decisions that the district court made. One, held him in civil contempt. Right? And two, found that because of the degree of his violation, right, that he wasn't permitted to do anything and he did all these things, that we're going to require him to disgorge 100% of his money, including not allowing him to recoup expenses. And so to me that's the rub here. I'm with you. Listen, he's in civil contempt, at least in my view. He's going to be held in civil contempt. But the scope of the prohibition matters a great deal, I think, to the appropriate disgorgement. And if you take sort of the broadest reading of A and B, or maybe even one broader than that, which I think is sort of what the district court said, you're not allowed to do anything, then disgorging 100% of the profits of this income makes perfect sense. But if instead A and B, take the other end, are narrowly interpreted as actual contact, right, and yes, he violated those on a number of occasions, but he also did other things that were not in violation of them, then the premise on which the total disgorgement is based seems in error. And I apologize. I should have said at the outset, my colleague and I have split the argument, and my colleague, Mrs. Zohn, was going to focus on the disgorgement. I'm not going to ignore your question, but just as a sort of structural comment. You probably are good, Dan. We probably want to talk to your colleague. But if you'd like, I mean, I had the same question as Judge Richardson. Even on a very narrow reading of A and B, it seems that there's a good record that there were violations, but the concern is that the district court, that's not what the district court said. The district court said, I don't even have to get to that because you're not allowed to manage this company. And so if that's wrong, it seems like we probably would have to send it back to take another look at least at the remedy. Well, the district court heard all of the testimony about the specific violations. Yeah, but he didn't rely on that. He set it aside to say, I don't have to look back at it, but he did not say, I'm going to ignore it. But he didn't base his ruling on it. I think he said, I don't even have to get in there. I think two or three times I've circled them. So, I mean, while that might be a legitimate basis for contempt, I think we're all suggesting maybe it is, and you may be arguing it too. We're trying to deal with the question we're all getting at, I think, which is how do you justify disgorgement if you're talking about those levels of violation? Can I? I do want to make sure I get to this. One thing that troubled me, and I apologize because it's not in the joint appendix, but it's part of the district court's docket, and I'm sure you're familiar with it, is there were a bunch of co-defendants who entered into consent judgments in this case, and their prohibitions read really differently. It said, defendant is limited from participation in the mortgage industry in any professional capacity, period. And it just seems like if that's what the government or the district court had in mind here, it should have used that language, and then it could have had the exception for HR. But instead, there's all this very detailed language under A and B. Isn't that a pretty good indication that something narrower than a total ban on participating in the management of this company was? It was certainly intended to be narrower because of this attempt to strike a balance and provide him with a means to earn a living. So putting to one side the HR exception still intended to be narrower? So A and B were supposed to limit participation in a more narrow way than saying, look, other than HR, you really can't be managing this place. It was supposed to target the two endpoints, essentially, where the consumer applicant is coming in, so any capacity that revolves around that, and the actual process. So what was he allowed to do beyond HR? What was he allowed to do? I'm not sure because I'm not familiar enough with the mortgage business, the details. So shouldn't that tell us that, like, maybe the person being held in contempt, if you don't know, I mean, you're obviously quite intelligent. This is the world you live in. You don't know what he was supposed to do or allowed to do based on reading it. How was he supposed to know what he was allowed to do or not to do based on reading it? Let me take a step back. Again, what I meant to say is he's allowed to do sort of ministerial tasks that are still part of he's allowed to be in the office. He's allowed to bring paper here and there. But anything that's substantive where his initial violation of taking kickbacks could have been implicated, and as your Honor previously mentioned, just putting a cutout in front of him is not going to protect the consumer public sufficiently if he has someone in between him. That doesn't really, if he's directing them to do everything in a certain way, that could potentially violate the law. But how do we get in that, and I know you're out of time if I may, how do we get out of A and B, a ministerial versus substantive distinction? You said, okay, A and B permit ministerial acts but not substantive acts. That might well have been a good line to draw. But nothing in A and B suggests that, does it? I mean, we don't see any reference to those terms or possibly what they would mean in the context of the mortgage industry. I'm not that familiar with how these things work, but it seems to me that would be a pretty hard line to draw between ministerial and substantive acts in the context that we're describing. Even if we were to say that the only restriction in 8A is he cannot contact consumer applicants. And so let's take that aside. We are still in a world where he was on a day-to-day basis actively engaged in individual mortgages. And so I don't know that we need to reach that conclusion in this case. Let me ask one thing because I know you're going to do a handoff on the disgorgement and whoever is the right person for this, it doesn't matter to me. But did you argue, have you argued at all that the disgorgement, that there's a violation of 16B's failure to disclose current business roles? Have you argued that that supports the disgorgement? Was that in any briefs or motions below? That was intended to be part of the argument. Are you saying it's not there? I'm not worried about intent. I'm worried about is there a place in the briefs or the JA where you say, because 16B says you're supposed to disclose your current roles. And the district court found that he did not do that. And I'm trying to see whether you have argued below or to us that that in and of itself would justify the disgorgement. The disgorgement was intended to address his three separate violations, including disclosing his new business activity and new residency moving to California. I'm not talking about new stuff. I'm talking about 16B's notification of current business roles. I don't believe we argued that below. Okay, thank you. That's what I thought. I just wanted to make sure. May it please the Court, Joseph Prezone from the Consumer Financial Protection Bureau on behalf of the regulators, and I'll be addressing the disgorgement. The district court did not abuse its discretion in issuing this disgorgement order because the disgorgement of profits was directly tied to the contemptuous conduct. And here the contemptuous conduct that the court found was, and I'm quoting from Judge Bennett, the contempt hearing is acts as a manager and essentially running the people's branches. And that's at 221, the joint appendix. So recognizing that the contemptuous conduct was his role as manager, it was inappropriate to look at his compensation as manager. And the compensations appointment agreement and the compensation agreement was turned to record at 412 and 417. I recognize that you each have different arguments to make, so I hope I'm not crossing your lines. But it seems like that really brings to the fore what Judge Richardson was concerned about, that if he tied the disgorgement order to his role as a manager, and if it turns out that being a manager was actually okay under A and B so long as there weren't these direct contacts, that maybe he needs to take another look at the amount of the disgorgement. I'm not sure that's necessary here, Your Honor, because the prohibitions in A, the conduct he was doing as manager were essentially what was prohibited in paragraphs 8A and 8B, the directing subordinates with respect to loan applications, the contacting lenders with respect to mortgage rates. But what the district court didn't do is sort of make any determination about how much of that he was doing and not doing, right? So I get you, right? So he's managing. And let's just assume hypothetically there's a prohibited part of management and a permitted part of management, right? Which I think is likely the sort of balance that struck here. There's some things he can do, there's some things he can't do. What the district court said was he can't do any of that, therefore disgorge everything. Your argument is, well, most of what he was doing was prohibited. And you may be right on the facts, but that seems like a decision that has to be made in the first instance by the district court. You don't get just to say nothing is permitted and then sort of base it on your now post hoc justification, and I don't mean this in a bad way, that, well, most of what he was doing was prohibited even under the narrower reading. Your Honor, I think the answer to this question is based on the burden on the party's blow to show what is the appropriate disgorgement. And the regulators we shared, we had the initial burden of showing what was the appropriate disgorgement based on the contemptuous conduct. It was then on Mr. Klopp to show what deductions were appropriate. But what I'm saying, except as a hypothetical, that your definition of what was contemptuous conduct was too broad. I don't know how far broad, but just except as a hypothetical, if I found your definition of contemptuous conduct was too broad, instead of all management, it should be this subset of management, right? Plainly including contacting borrowers or settlement services. And so if that was wrong, and I understand you disagree with it, but if that was wrong, don't you agree that in that circumstance it would have to go back to the district court judge to evaluate on the specifics of how much of the conduct was improper, how much of it was proper, and how much of the money that he got was sort of related to the improper versus the proper conduct. And the judge might sort of evaluate those facts and think about it in a similar way or a quite different way. But what he can't do is base it on this sort of incorrect, in my hypothetical, evaluation of the scope of contemptuous conduct. I'm not sure that's the case, Your Honor, solely because Mr. Clapp testified to what his salary was under what he recognized as his appropriate role under 8C. Mr. Clapp testified, and this is page 109 of the joint appendix in the contempt hearing, that he was rightfully entitled to $3,000 a month. And if 8C defined the limitation, so instead of being a negative prohibition, these limitations shall not prohibit him being an HR manager, if instead it said he may only serve as a HR manager, it's not a carve-out, but instead is an affirmative bar, I totally agree with you. But C, to me, I read C as being a carve-out, which says these limitations shall not prohibit him from acting solely as an HR manager. That's a carve-out of A and B. And so that's only useful after we've defined A and B. And my point is it looks like to me the judge below defined A and B too broadly, so the carve-out never sort of bears the weight that you would like it to. I think even accepting, Your Honor, his view of the relationship between A, B, and C, I still think it's instructive what Mr. Clapp testified to due to his income that he was rightfully entitled to. And again, the burden was on him to show what was appropriately deducted, and he had the opportunity to make the argument that, no, no, no, I was also entitled to X, Y, or Z also, and he never made that argument. Well, he made the argument that I'm entitled to a reduction based on my funding of the business, right? So not my management of the business, right? So maybe that's your argument, but this seems like all things for the district court below, but if his funding of the business, right, which seems like most plainly not prohibited by A and B, right? So if he's the funder of the business, A and B seems to permit him to fund the business. And so whatever portion of that money that he got as a result of being the funder as opposed to the manager, that seems to me to be distinct. And so the district court below said, well, you're not even going to get the money back that you funded, much less the sort of profits that you got as a result of being the funder as opposed to the manager. Right. It just seems like the sort of broad decision that the district court made below didn't account for what strikes me as sort of like a slightly more nuanced picture. The two responses on with respect to the funding, I believe your record indicates that Mr. Clough was entitled to reimbursement for his investments, the overhead, but he had to request that within so many days under his employment agreement with People's Bank, and he never did so. And the second thing was that the district court also found that some of those investments were violative of the consent order, were evidence that he violated the consent order. For instance, it referenced marketing services. And the ones that were violating the consent order, I understand why those would be disallowed. But your first argument, that it didn't comport with the shareholder agreement or whatever you want to describe it as, doesn't seem to me to be responsive of the question of whether they were legitimate funding activities or impermissible AA violations. And the other point Judge Bennett made was that the evidence for those investments, the overhead, I don't think he credited that because there was not There was documentary support for the $350,000. There wasn't documentary support for the extra $100,000 that he described. I understand the $100,000, but there was documentary support for the, I'm guessing that's around $350,000, right? Because Judge Bennett was very concerned with the Ravens tickets, right? Which understandably so. More expensive now. Right? But it seems to me that he was required to grapple with some of that nuance that we didn't because he accepted your contention, which is all of this is contemptuous, right? Management, funding, everything that he did, 100% of what he did was contemptuous. Then his ruling makes sense. If instead it's some percentage, and I'm not guessing what that percentage is, it might be 90%, it might be 20%, that that ought to at least inform, though not dictate, inform the remedy decision that's made below. So two responses to that, Your Honor. One, I think it's important to bear in mind that this is being reviewed under abuse of discretion, and while there may be a different view about what was better to do in this case, I don't think it was an abuse of discretion here for the district court to find that his continued management, as he said, of the contempt hearing, was violative of the consent order. Can I? Go ahead. I'm sorry, let me just ask you just a quick question about that. So this is the district court who entered the consent judgment, and he does seem to have taken the view that any kind of management other than HR was not okay. Basically, this guy's supposed to be out of the business with a little bit of a carve-out for HR, and I take it that was your view, too. I'm a little unclear as to your colleague's view. But isn't it possible that there was really no meeting of the minds in this case? And I know the district court alludes to this a couple of times. If we send this back, it seems entirely possible to me that the district court's going to say, Look, I thought this, the government thought that. Perhaps Mr. Klopp thought something entirely different. Like the government wasn't going to sign off on something that lets him run a mortgage business after he just did all these kickbacks. And so there's no meeting of the minds here. Let's just withdraw the consent decree and let Mr. Klopp go to trial. So that issue was raised, and we addressed this on page 5 of our footnote 5 on page 18 and 19 of our response brief. Judge Banner recognized that this was a possible argument, and he invited Mr. Klopp to make this argument, and Mr. Klopp had the opportunity after the contempt hearing, and he just never chose to do so. But the district court could reach this if we were to remand it, right, and say, Look, we for Circuit are reading this consent judgment differently than you did and differently than the government did. I mean, is there any reason the district court couldn't just then decide, Okay, there's been no meeting of the minds in this case? I suppose that is a possibility. But here, and I see I'm over my time. I'll finish my answer if you don't mind. Here, I think at a minimum, all parties agree that Mr. Klopp is prohibited from A and B. There's no arguing about those prohibitions, and here there's enough evidence in the record that he was continuing to work on consumer borrow, loan applications. There are e-mails that indicate with the subject line, the loan applicant's name, he's continuing to e-mail lenders, negotiating mortgage rates. So I think there's sufficient evidence in the record to find that he had violated at the very minimum A and B, even if there is confusion about this management and whether it applies. The argument there being, in essence, the district court recognizes maybe you say there's no meeting of the minds. Your response is nobody's raised that, and it's very clear, at least in some scope, that he's in violation of the judgment. The question we've got is only how far that scope extends. He was contacting borrowers and the like. Everybody agrees that was prohibited. The question is only how far that goes, and that doesn't mean that you have to set aside the agreement in total. That's right, Your Honor. Unless there are any further questions, thank you. Let me address this court, which I didn't have an opportunity to do on my opening. As the court knows, civil contempt sanctions are intended to compensate a plaintiff for losses, and unlike criminal contempt, cannot be punitive. Clearly, all of the compensation Mr. Klopp received is punitive, given the factual scenario below. The regulators sought every penny, yet they offered no evidence, none. Not a witness, not a document to support the argument. There was no attempt to show any specific harm caused by Mr. Klopp's activities, either to the regulators or to any of the consumers that the regulators are here to protect. There was no attempt to show that Mr. Klopp was entitled. They argued he was not entitled to any credits, which, of course, Judge Bennett did find he was entitled to credit for the tax withholdings. Consequently, we have the regulators seeking a punitive disgorgement, which Judge Bennett adopted with that one credit. Counsel, your colleague was talking about the standard of review, and I am interested in this. Given that this is the district court who entered the decree, do we give any sort of deference to the way the district court understood the judgment itself was entering? You do, but this was a case where the regulators carried the burden of proof, and it was our position that they didn't meet that. Certainly, this is interesting because Judge Harris brought up the fact that all these other cases that are found in the docket, and Judge Bennett did, under the local rules, he heard all of those cases as the assigned judge. He was very familiar with other cases, and I respectfully say I think that colored his view of this case because, as Judge Harris noticed, none of the other defendants had an agreement similar to what Mr. Klopp had, and that agreement was negotiated by the parties. Let me ask you. I'm confused about the answer you just gave a little bit. Under the abuse of discretion, I mean, your argument about disgorgement, the basis of disgorgement, what was offset, that seems to me to be classic discretionary sort of roles of the district court. It seems to me that the best argument you have is the ambiguity or alleged ambiguity of the agreement, but then you just said that we should defer to the trial judge in terms of what it meant. Is that your position, that we should defer or that we should look at the text of it? No. My position is that the stipulated final judgment lacked unequivocal command as to the scope of Mr. Klopp's activity during its term. So should we defer to Judge Bennett's reading of that given that he entered into it? You would defer as his credibility findings, but not to his legal interpretation of that agreement. So when you said that a couple seconds ago, that's not what you meant? I was not precise. But we do have case law, right, saying that when we evaluate a district court's interpretation of its own decree, we are properly respectful of the district court's superior position to evaluate its order. I mean, we have some case law on this that suggests, you know, not some kind of weird thing in between de novo and abuse of discretion, but we pay attention to the fact that the district court is in a pretty good position to know what was intended by the decree that it entered. But then he offered the parties, similar to the conversation you had with my colleague, the opportunity to go back and start again. And essentially, if there was a lack of a meeting of the mind, he was going to throw the consent order away and set the matter up for trial. He asked the regulators if they wanted to do that. They said no. He asked Mr. Klopp if he wanted to do that. Mr. Klopp said no. The parties have had that opportunity. So my time is expiring. I thank the court for its attention. Thank you. It does matter. All right. We'll come down and greet counsel, and then hear our final case for the day.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.